# CIRCUIT COURT OF CHESTERFIELD COUNTY

Kelly Pierce

v.

Chesterfield County

April 6, 2000

Case No. CH00-97

BY JUDGE WILLIAM R. SHELTON

On March 22, 2000, the parties appeared, by counsel, on an appeal of a decision of the County Administrator regarding two grievances filed by Ms. Pierce against the Chesterfield County Fire Department. In a letter opinion dated December 22, 1999, the County Administrator determined that Ms. Pierce could not challenge the actions of the County of Chesterfield as her complaints revolve around a transfer within the Department, and Section II of the Grievance Procedure expressly lists transfer decisions as non-grievable. The County Administrator also determined that the second grievance filed by Ms. Pierce regarding procedural failings in the handling of the initial grievance was also non-grievable as any defects were timely cured.

The grievances filed by Ms. Pierce stem from a third-party complaint filed against Ms. Pierce and Mr. Riddle, firefighters with the Chesterfield Fire Department, in September of 1999. The complainant alleged that the relationship between the two firefighters was "inappropriate." A supervisor first informed Ms. Pierce of the complaint in a meeting on September 4, 1999. In a subsequent meeting on September 7, 1999, Ms. Pierce was informed that she and Mr. Riddle were to be transferred. She was not given an opportunity to explain or challenge the complaint. When Ms. Pierce inquired why she had never been informed prior to this that her behavior was problematic, she did not receive an answer.

After consulting with an attorney, Mr. Riddle and Ms. Pierce met with Chief Cooper on September 10, 1999, and purportedly reached an agreement

regarding the transfers and the future handling of the incident. The firefighters explained that they would not file a grievance as they were relying upon Chief Cooper's word. Specifically, Chief Cooper allegedly promised to provide "favorable work assignments."

On October 10, 1999, at her new assignment, Ms. Pierce discussed with Chief Cooper her concerns that other firefighters engaged in the same type of behavior as she and Mr. Riddle but as between male firefighters, it is considered acceptable. She expressed her opinion that it was unfair that the two firefighters were never informed their behavior was inappropriate or given a chance to take corrective measures. Chief Cooper informed Ms. Pierce that her behavior would not have been problematic if she had treated all of the other firefighters in the same manner as Mr. Riddle.

On October 19, 1999, and again on November 21, 1999, Ms. Pierce had conversations with Chief Cooper regarding her placement within the department. Chief Cooper seemed to indicate that Ms. Pierce would not be transferred.

On November 27, 1999, Chief Graham requested a private meeting with Ms. Pierce regarding her transfer requests. At this meeting, Chief Graham informed Ms. Pierce that he had no plans to transfer her. Ms. Pierce was uncomfortable with this meeting as Chief Graham stated that she could call him anytime but Chief Graham "does not communicate with rank and file officers as a rule."

On November 30, 1999, Ms. Pierce informed her supervisor, Captain Speed, that she was filing a grievance. On December 3, 1999, Captain Speed requested a clarification regarding the grievance. She was later brought in to talk with Chief Cooper and signed a piece of paper listing her grievances.

Ms. Pierce informed Captain Speed that she was filing a second grievance on December 6, 1999, after she was called into a meeting with Captain Speed, Chief Cooper, and Chief Graham, while other firefighters were allowed a lunch break. Ms. Pierce attempted to postpone the meeting but was not permitted nor was she permitted to make a requested phone call to the Union President. During this meeting, the supervisors informed Ms. Pierce that transfers were non-grievable and stated that because Mr. Riddle was also transferred, she has no basis for claiming sexual discrimination. Ms. Pierce alleges that this meeting was designed to intimidate her. The County concedes that Ms Pierce's complaints were not initially handled "in accordance with the Grievance Procedure."

On December 22, 1999, the County Administrator informed Ms. Pierce that her complaints were not grievable under Chesterfield County Grievance Procedure. A timely appeal was filed.

Ms. Pierce lists several reasons for her grievances. The first reason listed is the inappropriate nature in which the complaint was handled. In her second and third complaints, Ms. Pierce alleges sexual discrimination in the form of unequal treatment regarding the standards of behavior which were applied to her. Specifically, Ms. Pierce charges that the camaraderie between her and her partner is very similar to behavior typically exhibited between other fire fighters but that she is being singled out because of her sex. She also alleges that this amounts to discrimination as she is not being allowed to develop friendships within the department whereas men are allowed to develop friendships with other men. Finally, Ms. Pierce alleges that the meeting on December 6, 1999, was retaliatory and calculated to intimidate her.

In response, the County argues that Section II of the Grievance Procedure lists transfer decisions as non-grievable and as there is no evidence that Ms. Pierce's transfer was for any reason but to correct a disruptive situation. The County further argues that any procedural defects were timely cured as Ms. Pierce began the process over and filed a second grievance on December 9, 1999. Section VII of the Grievance Procedure allows a "party not in compliance" to correct noncompliance "within five calendar days of receipt of *written notification* by the other party of the compliance violation" (emphasis added). As Step 1 of the grievance policy does not require written notice, the Court finds that any procedural defects were timely cured.

Under the circumstances alleged by Ms. Pierce in her written explanation, the Court finds that Ms. Pierce's complaints are not grievable under the policy and affirms the decision of the County Administrator. Ms. Pierce first learned of the complaint against her on September 4, 1999, and that she would be transferred on or around September 10, 1999. Ms. Pierce, however, did not elect to file a grievance after the initial complaint was made against her in September, but rather, waited until learning that she would not be transferred to file her complaint in November, nearly three months after learning of the complaint.

Section VI of the Employee Grievance procedure indicates that a "grievance must be reported to the employee's immediate supervisor within twenty (20) calendar days of the event giving rise to the grievance." As Ms. Pierce failed to timely complain of the alleged disparate treatment, the Court affirms the decision of the County Administrator. Moreover, the Court finds that as Ms. Pierce waited to file her complaint until after learning where she would be stationed, she is grieving a transfer decision which Section III of the Grievance Procedures lists as non-grievable. In reaching its determination, the Court does not comment upon the appropriateness of the handling of the complaint, the existing grievance policy, or any possible remedies available

28

to Ms. Pierce under state or federal law but notes simply that, under the circumstances of this case and the policy as it is written, Ms. Pierce's complaints are not grievable.